UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSSIRIS PATRICIA ARIAS HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, Attorney General of the United States, in her official capacity, et al.,<br><br>Respondents. | Case No.: 25cv3320-LL-DEB<br><br>**ORDER GRANTING IN PART PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 [ECF No. 1];**<br><br>**ORDER DENYING AS MOOT PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER [ECF No. 2]** |

Pending before the Court are Petitioner Rossiris Patricia Arias Hernandez's Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.") [ECF No. 1] and Motion for Temporary Restraining Order ("TRO") [ECF No. 2]. Respondents filed an Opposition [ECF No. 9], and Petitioner filed a Reply [ECF No. 12]. For the following reasons, the Court **GRANTS IN PART** the Petition and **DENIES AS MOOT** the Application for Temporary Restraining Order.

/ / /

/ / /

## I. BACKGROUND

Petitioner Rossiris Patricia Arias Hernandez is a Colombian national who came to the United States on November 23, 2023 seeking safety from years of physical and sexual abuse by Revolutionary Armed Forces of Colombia members. ECF No. 1 ¶¶ 23–24. She was issued a Notice to Appear and released on her own recognizance. *Id.* Petitioner has an asylum petition pending. *Id.* ¶¶ 27, 37–39. On July 7, 2025, after Petitioner appeared at the San Diego Immigration Court for a master calendar hearing, she was taken into Immigration and Customs and Enforcement ("ICE") custody and subsequently detained at Otay Mesa Detention Center, where she remains. *Id.* ¶¶ 31–33. On August 14, 2025, Petitioner filed a Motion for Custody Redetermination Hearing, which the immigration judge denied on August 22, 2025. Oppo. at 3 (citing Exhibit 7 to the Oppo.) The immigration judge denied the request for a change in custody status on the basis that:

> Respondent was detained upon entering the country and released on parole and the parole was subsequently revoked. The Court find[s] that it does not have jurisdiction pursuant to the *Matter of Q Li*, 29 I&N Dec. 66 (BIA 2025). The Court found an alternative finding of a bond of $7,500 and ATD if the court were to have jurisdiction.

ECF No. 9-2 at 21; *see also* Pet. ¶¶ 35-36.

ICE charged Petitioner with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as being present in the United States without admission or parole and under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant not in possession of a valid entry document. Oppo. at 4 (citing Exhibit 8). Petitioner was placed in removal proceedings under 8 U.S.C. § 1229a. Oppo. at 4. On October 27, 2025, Petitioner filed an application for relief from removal, which remains pending. Pet. ¶ 39. On November 20, 2025, Respondents moved to "pretermit" Petitioner's asylum claim so that she can be removed to Honduras, pursuant to the Asylum Cooperative Agreement between the United States and Honduras. *Id.* ¶ 40. Petitioner's counsel prepared an objection to the government's motion to pretermit (*Id.* ¶ 41), and the Office of the Principal Legal Advisor ("OPLA) trial attorney withdrew the motion to permit on December 5, 2025. ECF No. 12-1, Supplemental Decl. of Andreana

Sarkis filed in support of Reply ("Sarkis Decl.") at ¶¶ 2-3. The Immigration Judge set a hearing and a deadline for filing all remaining briefing and evidence on Petitioner's asylum claim for January 27, 2026, and a date for the merits hearing will likely be after that. Sarkis Decl. ¶ 4.

In the instant Petition, Petitioner alleges the following claims for relief: (1) violation of the Due Process Clause of the Fifth Amendment (substantive due process); (2) violation of the Due Process Clause of the Fifth Amendment (procedural due process); (3) unlawful application of 8 U.S.C. § 1225(b); (4) violation of the Administrative Procedure Act; and (5) release pending adjudication. *Id.* ¶¶ 61–86.

Petitioner's Petition and Motion for Temporary Restraining Order both seek (1) her immediate release from custody and an order that enjoins Respondents from re-detaining Petitioner absent a pre-deprivation hearing before this Court, where Respondents must show, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that her physical custody is required; (2) alternatively, an individualized bond hearing before an immigration judge; and (3) an order prohibiting Respondents from transferring Petitioner out of this district or the United States until, at least, these habeas proceedings have concluded. Pet. at 20; ECF No. 2-1 at 23. Petitioner's counsel also seeks "attorney's fees and costs pursuant to the Equal Access to Justice Act." Pet. at 20.

## II.    LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).
/ / /

## IV. DISCUSSION

### A. Jurisdiction

Respondents argue that as a threshold matter, Petitioner's claims are jurisdictionally barred under 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(a)(5). Oppo. at 10-13.

#### 1. 8 U.S.C. § 1252(g)

Section 1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

Respondents argue that Petitioner's claims are barred because her detention arises from the "Attorney General's decision to commence proceedings" against her, which removes district court jurisdiction. ECF No. 9 at 12. Petitioner opposes, arguing that § 1252(g) does not apply because she is not challenging the decision to "commence removal proceedings" but is instead challenging "Respondents' decision to continue detaining her without affording a bond hearing and DHS's misclassification of her detention as mandatory under § 1225(b)." Oppo. at 13.

The Court finds § 1252(g) does not bar its jurisdiction over Petitioner's claims. The Supreme Court has explained that § 1252(g) does not bar jurisdiction for the "universe of deportation claims" but instead "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 WL 2461663, at *2 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). The Supreme Court later reiterated this narrow application of § 1252(g): "We did not interpret this language to sweep in any claim that can technically be said to 'arise

from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). Petitioner is not challenging the commencement of removal proceedings but is instead claiming a lack of legal authority to subject her to mandatory detention under 8 U.S.C. § 1225(b)(2) during proceedings. *See Ibarra-Perez*, 2025 WL 2461663, at *2 (noting that a claim based on a lack of legal authority to execute a removal order due to a violation of a court order, the Constitution, INA, or international law, does not challenge the decision or action to execute a removal order). Therefore, § 1252(g) does not limit the Court's jurisdiction in this matter.

### 2. 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(a)(5)

Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9). Section 1252(a)(5) adds that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter," except for certain actions challenging orders under § 1225(b)(1). 8 U.S.C. § 1252(a)(5), (e).

Respondents argue that § 1252(b)(9) and § 1252(a)(5) apply here because they remove the Court's jurisdiction "to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings." ECF No. 9 at 12.

The Court finds § 1252(b)(9) and § 1252(a)(5) do not apply to Petitioner's claims. The Supreme Court has explained that "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907 (2020)

(quoting *Jennings*, 583 U.S. at 294–95). The Ninth Circuit has also recognized that "claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). Petitioner is claiming a lack of legal authority to subject her to mandatory detention under § 1225 instead of detention with a bond hearing under § 1226(a), which is not a review for an order of removal, the decision to seek removal, or the process by which removability will be determined. *See Jennings*, 583 U.S. at 292–95 (finding that § 1252(b)(9) did not deprive the Court of jurisdiction to determine whether § 1225 and § 1226 require detention without a bond hearing). Accordingly, § 1252(b)(9), and by extension § 1252(a)(5), does not bar the Court from jurisdiction in this case.

The Court turns now to the merits of the Petition.

**B.   Merits**

Petitioner argues that her detention without a bond hearing is unlawful because (1) she is wrongfully held under the mandatory detention provision of § 1225(b)(2); (2) it violates the Due Process Clause of the Fifth Amendment, both substantive and procedural; and (3) it is arbitrary and capricious and thus violates the Administrative Procedure Act. Pet. ¶¶ 61-82.

The Court will first address Petitioner's claim for relief that she is wrongfully held under the mandatory detention provision of § 1225(b)(2), which requires interpreting the relevant statutes.

Noncitizens are detained during removal proceedings under two statutes: 8 U.S.C. §§ 1225 and 1226. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and concerns "applicants for admission" who are defined for purposes of § 1225 as an "alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). An applicant for admission "seeking admission or readmission to or transit through the United States" is inspected by immigration officers. § 1225(a)(3). After inspection, certain applicants for admission who are deemed to be inadmissible shall be subject to expedited removal—

"without further hearing or review"—unless they indicate an intention to apply for asylum or a fear of persecution, in which case they will be referred for a credible fear interview by an asylum officer. § 1225(b)(1)(A)(i)-(ii); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 109 (2020). For the other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" for a proceeding under the regular removal process of § 1229a. § 1225(b)(2)(A). Applicants for admission detained under either prong of § 1225(b) are subject to mandatory detention until removal proceedings have concluded, but may be paroled into the United States by DHS "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also Jennings*, 583 U.S. at 300, 302 (finding that parole is the only statutory provision for release from detention under § 1225(b) during removal proceedings). There is no statutory right to a bond hearing for noncitizens detained under § 1225(b). *See Jennings*, 583 U.S. at 296–97.

Section 1226 is titled "Apprehension and detention of aliens" and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." § 1226(a). The government may then "continue to detain the arrested alien" or release the alien on bond or conditional parole. § 1226(a)(1)-(2). After the initial decision is made to either detain or release the noncitizen, the noncitizen may request a bond hearing (i.e., custody redetermination) before an immigration judge. § C.F.R. § 1236.1(d)(1). However, § 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. Section 1226(c) specifies that noncitizens who are inadmissible or deportable because of certain crimes are ineligible to be released on bond or parole, unless it is deemed necessary for witness-protection purposes. §§ 1226(a), (c).

Petitioner and Respondents interpret § 1225 and § 1226 differently. Petitioner contends that "for decades, the detention of noncitizens who entered the United States without inspection has been governed by 8 U.S.C. § 1226 [and not 1225]." Reply at 14.

Petitioner states that "since May 2025, Respondents have shifted their interpretation of the statute," and have more broadly interpreted 8 U.S.C. § 1225 to find that an "applicant for admission" includes all noncitizens who entered without admission or inspection, thereby subjecting them to mandatory detention." *Id*. at 15. Petitioner argues that § 1226(a) applies to Petitioner's detention based on the "statutory scheme and relevant facts of this case." *Id*. at 17. Petitioner states that "all the documentation that Respondents have provided Ms. Arias Hernandez indicates that her detention is governed by § 1226 because she was already in the country." *Id.* Respondents oppose, arguing that Petitioner is an "applicant for admission" per the plain language of the statue and subject to the mandatory detention provisions of § 1225(b)(2). ECF No. 9 at 13.

"The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989) (citation omitted). "We must enforce plain and unambiguous statutory language according to its terms." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (citations omitted). "But oftentimes the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (internal quotation marks and citation omitted). Thus, "when deciding whether language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." *San Carlos Apache Tribe v. Becerra*, 53 F.4th 1236, 1240 (9th Cir. 2022), *aff'd,* 602 U.S. 222 (2024) (internal quotation marks omitted) (quoting *King*, 576 U.S. at 486).

The Court finds the plain text of § 1225(b)(2) does not support Respondents' contention that it applies to any noncitizen present in the United States who has not been admitted. The terms, title, and context indicate a narrower application. An "applicant for admission" detained under § 1225(b)(2) requires an "examining immigration officer" to determine that the noncitizen "seeking admission is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A). Broadly reading §1225(b)(2) detention to merely require being "applicants for admission"—noncitizens present in the United States who have not

been admitted or who arrive in the United States—ignores the other language that also requires them to be "seeking admission" and for the examining officer to determine they are "not clearly and beyond a doubt entitled to be admitted." *See Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023) ("[A] court 'must interpret the statute as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" (citation omitted)); *see also Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 2809996, at *6 (D. Mass. Oct. 3, 2025); *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4–5 (E.D. Cal. Sept. 23, 2025); *Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025). Furthermore, the title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," which indicates that this section is limited to people applying for admission when they arrive in the United States or upon recent entry. *See Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute." (internal quotation marks and citation omitted)). There is no indication that Petitioner was actively "seeking admission" upon arrival or recent entry at the border and that immigration officers inspected Petitioner and determined they she was not entitled to be admitted.

Respondents contend that "seeking admission" is simply a characteristic of all "applicants for admission" and not a separate requirement, but the Court is not persuaded. *See* ECF No. 9 at 13. As other courts have found, the use of the present participle "seeking" "necessarily implies some sort of present-tense action." *See, e.g.*, *Lepe*, 2025 WL 2716910, at *5 (quoting *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)). The plain text of § 1225(b)(2)(A) requires a noncitizen present without admission to be actively seeking lawful entry. *See id.*; *Esquivel-Ipina v. LaRose*, No. 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *5 (S.D. Cal. Oct. 24, 2025) (agreeing

with other courts in the Ninth Circuit who find that "seeking admission" requires an affirmative act such as entering the United States or applying for status (citing cases)). Respondents' interpretation would render the term "seeking admission" superfluous. *See Shulman*, 58 F.4th at 410–11; *Lepe*, 2025 WL 2716910, at *5 ("The government's position would make the 'seeking admission' language meaningless and violate the rule against surplusage." (citations omitted)). The Ninth Circuit has already rejected an interpretation of "applicant for admission" that would consider any applicant for admission as someone also "deemed to have made an actual *application* for admission." *See Torres v. Barr*, 976 F.3d 918, 927 (9th Cir. 2020); *see also Echevarria v. Bondi*, No. CV-25-03252-PHX-DWL (ESW), 2025 WL 2821282, at *6 (D. Ariz. Oct. 3, 2025) (citing *Torres*, 976 F.3d 918). The Court finds Petitioner was not "seeking admission" upon arrival or recent entry at the border pursuant to § 1225(b)(2).

Additionally, if Respondents' argument that all noncitizens present in the country without admission are subject to mandatory detention under § 1225(b)(2) is true, it would render superfluous a recent amendment to § 1226(c). *Lepe*, 2025 WL 2716910, at *6 (collecting cases). Section 1226(a) provides discretionary detention of noncitizens pending a decision on removal, except for certain noncitizens who are inadmissible or deportable due to certain crimes described in § 1226(c). In 2025, the Laken Riley Act added a subsection to § 1226(c)(1), denying bond or parole to any noncitizen who is both (1) inadmissible under § 1182(a)(6)(A), (6)(C), or (7) as a noncitizen "present without admission or parole," or without valid entry documents, or who used fraud or misrepresentation to obtain entry documents, *and* (2) charged with, arrested for, or convicted of certain crimes. Laken Riley Act, Pub. L. No. 119-1, 139 Stat 3 (2025); § 1226(c)(1)(E). In other words, if noncitizens are present without admission and they have *not* committed certain crimes, they are detained under § 1226(a)'s default provisions. *See* § 1226(a) (providing discretion to release noncitizens on bond or parole "[e]xcept as provided in subsection (c)"); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025). "As the Supreme Court has recognized, when Congress creates

'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies." *Rodriguez*, 779 F. Supp. 3d at 1256–57 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Therefore, if—as Respondents urge—all noncitizens present without admission were already subject to mandatory detention under § 1225(b)(2), there would be no need for an amendment that mandates detention for all noncitizens "present without admission or parole" *and* who have been charged with certain crimes. *See Lepe*, 2025 WL 2716910, at *6; *Garcia*, 2025 WL 2549431, at *6. "When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), *abrogated on other grounds by Riley v. Bondi*, 145 S. Ct. 2190 (2025). The Court will not find that Congress passed the Laken Riley Act to add an amendment that performs the same function as §1225(b)(2). *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025); *see also Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Accordingly, under the plain language of § 1225 and § 1226, the Court finds, as have many other courts addressing the same issue, that Petitioner's detention, as a noncitizen present in the United States without being admitted or paroled and who was residing in the country prior to being charged, is governed by the discretionary detention provision of § 1226(a) and not the mandatory detention of § 1225(b)(2).[1] *See, e.g.*, *Contreras-Cervantes v. Raycraft*, No. 2:25-CV-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) (collecting cases); *Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) (collecting cases). *But see Chavez v. Noem*, No. 3:25-CV-02325-CAB-SBC, 2025 WL 2730228, at *4 (S.D. Cal. Sept. 24, 2025) (finding petitioners as noncitizens residing in the

---

[1] Having reached this conclusion on Petitioner's first claim for relief, the Court declines to address Petitioner's remaining claims for relief.

country without inspection or parole are "applicants for admission" and properly detained under § 1225(b)(2)). This finding also comports with the Supreme Court's interpretation that § 1225(b) applies to the detention of "aliens seeking admission into the country" while § 1226 applies to "aliens already in the country" during removal proceedings. *See Jennings*, 583 U.S. at 289. It is also consistent with years of agency practice based on regulations from EOIR in 1997 issued to implement the provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which includes the detention provisions of § 1225 and § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10312 (Mar. 6, 1997). The agency regulation explained under a section titled "Apprehension, Custody, and Detention of Aliens" that "non-criminal aliens" are subject to "the new $1,500 minimum bond specified by IIRIRA," and that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Id.* at 10323.

## V.   CONCLUSION

For the reasons set forth above, the Court **ORDERS**:

1. Petitioner's Petition for Writ of Habeas Corpus is **GRANTED IN PART**.[2] Respondents shall provide Petitioner with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within **seven (7) days** of the date of this order. At any such hearing, Respondents **SHALL NOT** deny Petitioner bond on the basis that 8 U.S.C. § 1225(b)(2) requires mandatory detention.

2. Petitioner's Application for Temporary Restraining Order is **DENIED AS MOOT**.

---

[2] Petitioner's requested relief includes an award of attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412, and on any other basis justified under law. Pet. at 20. The Court denies this relief without prejudice.

4. The Clerk of Court shall enter judgment in Petitioner's favor and close this case.

**IT IS SO ORDERED**.

Dated: December 15, 2025

_____
Honorable Linda Lopez
United States District Judge